

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

OVERLAND SOLUTIONS, INC.

VERSUS

DAVID CHRISTENSEN and
PREMIUM AUDIT PARTNERS

CIVIL ACTION

NO. 06-53-JVP-SCR

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case involves claims by Overland Solutions, Inc. ("Overland") for damages arising from a breach by defendant, David Christensen, of a non-solicitation agreement with Overland.[1]

## BACKGROUND

On October 5, 2006, summary judgment was rendered in favor of Overland and against Christensen with the issue of damages reserved for trial (doc. 52). In granting summary judgment against Christensen, the court found that, after he resigned his employment with Overland, Christensen established a competing company called Premium Audit Partners, Inc. ("Premium"). The court also found that Christensen violated the non-solicitation agreement when, as president and

---

[1] The non-solicitation agreement provides in pertinent part:
  Employee agrees that during his or her employment and for a period of one (1) year following the termination of Employee's employment by OSI, he or she will not, directly or indirectly, individually or on behalf of others, solicit for employment or hire, attempt to solicit for employment or hire, any employee of OSI [with whom Employee had regular contact in the course of his or her employment or any employee at any facility where Employee performed services for OSI.]
(Doc. 27, Ex. B, ¶ 2).

CEO of the new company, he offered jobs to eight Overland employees and hired five of them within a year of his resignation from Overland.

On May 24, 2007, the court entered a default judgment against defendant, Premium, and, pursuant to Rule 55(2) of the Federal Rules of Civil Procedure, the matter was referred to Magistrate Judge Stephen C. Riedlinger for a determination of the amount of the damages (doc. 78).[2] An evidentiary hearing was held on July 17, 2007, and on July 18, 2008, the court adopted the Report and Recommendation of the Magistrate Judge, awarding to Overland damages in the amount of $395,975 on its claims against Premium. (doc. 88).[3]

## THE TRIAL

On June 22, 2009, a bench trial was held to determine the damages incurred by Overland as a result of Christensen's breach of the non-solicitation agreement. During the trial, Christensen, acting pro se, objected to the introduction of evidence pertaining to the alleged 2005 production of the five Overland employees hired by Christensen to work at Premium. Christensen grounded the objection on plaintiff's failure to provide him with the data upon which it relied in calculating the 2005 production of the departed employees.

---

[2] In an amended complaint filed on February 9, 2006, Overland joined Premium Audit Partners, Inc. as a defendant, alleging that it: (1) was formed by Christensen as an alter ego; (2) was enriched without cause at plaintiff's expense; and (3) violated the Louisiana Uniform Trade Secrets and the Louisiana Unfair Trade Practices Act.

[3] Overland was awarded $51,578 in training and mentoring costs for replacement employees, $24,000 for damage control costs (executive travel), and $320,400 for relief trips made by employees traveling to Louisiana to perform an amount of work equivalent to that performed by the five departed employees in the previous year.

Plaintiff's counsel acknowledged that the information was derived from a computer report, but stated that the report was not provided to the defendant because the defense had never requested the data upon which the damage calculations were based.

The record demonstrates, however, that on November 20, 2008, the court ordered plaintiff to "produce to the defendant the documents which plaintiff relied upon to calculate its damages" (doc. 98). Because plaintiff's counsel has admitted not providing the defense with the document upon which it relied in determining the 2005 production of the departed employees, the court hereby excludes from consideration any evidence pertaining to that alleged production.

**General Testimony**

At trial, the court heard the testimony of David William Harris, Overland's senior vice president for the company's central region, which includes the Baton Rouge Office. The court also heard the testimony of David Green, Overland's vice president of financial operations.

David Harris described Overland as a service provider for insurance, government, and financial institutions and testified that it provides audits, surveys and data primarily to the insurance sector. The Baton Rouge office covers the State of Louisiana, and from the time that office was opened until his resignation, David Christensen was the general manager of the Baton Rouge office.

According to Harris, Overland sends field auditors out to clients to perform premium audits or loss control services by reviewing records and obtaining

3

information that can be used to adjust commercial insurance policies. Those auditors require specialized training, and to protect its investment in its employees, the company routinely requires managers to sign non-compete and non-solicitation agreements, as Christensen did on September 27, 2004.

Harris testified that he learned of Christensen's resignation around November of 2005, and that Overland learned, in the first part of 2006, that five of its employees were resigning from Overland to work at Premium. According to Harris, that created a problem for Overland because the first part of the year is a particularly busy time for the Baton Rouge office. That problem was further complicated by the fact that Hurricane Katrina had hit a few months earlier and had caused many clients to postpone audits that would otherwise have been performed in the latter part of 2005.

After considering the testimony of the witnesses and the exhibits admitted into evidence, the court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent that any finding of fact constitutes a conclusion of law, the court hereby adopts it as such, and to the extent that a conclusion of law constitutes a finding of fact, the court hereby adopts it as such.

## FINDINGS OF FACT

1. On September 27, 2004, defendant, David Christensen, signed a non-solicitation agreement with Overland that provided in pertinent part that he would not, "directly or indirectly, individually or on behalf of others, solicit for employment or hire, attempt to solicit for employment or hire, any employee of OSI [with whom Employee had regular contact in the course of his or her employment or any employee at any facility where Employee performed services for OSI]."

2. David Christensen breached the non-solicitation agreement when he hired five Overland employees to work at Premium within a year of the termination of his employment with Overland.

3. The evidence presented at trial is insufficient to support a finding that Overland sustained damages in performing relief trips to Louisiana.[4]

4. The evidence presented at trial is insufficient to support a finding that Overland sustained damages in the form of recruiting and hiring costs in the course of hiring replacement employees. David Green testified that, in calculating the costs of hiring replacement employees, he included overhead, recruiting advertisements, information technology costs, and the salaries and benefits of Overland employees involved in recruiting and hiring during the period in question. No evidence was presented, however, which indicates that any of these costs were incurred due to the departure of the five employees. Moreover, Green testified that Overland would have incurred all of the claimed labor expenses even if the five employees had not left Overland. He also testified that his calculations assumed that advertisements had been placed for each of the five positions, but he acknowledged that he did not know whether that was actually the case.

5. The court finds that Overland did not incur damages in the form of home office training instructors' salaries. According to the uncontroverted testimony of David Green, Overland's instructors' salaries are fixed costs that were not incurred due to the hiring of five replacement employees.

6. The evidence presented at trial is insufficient to support a finding that Overland sustained damages in the form of other home office training costs.[5]

---

[4] *See infra,* Conclusions of Law, ¶ 3.
[5] *See infra,* Conclusions of Law, ¶ 5.


7. The evidence presented at trial is insufficient to support a finding that Overland sustained damages in the form of training pay. David Green testified that he included "training pay" in the damage calculation, and he defined it as the salary given to employees who are in training. No evidence was presented, however, which would indicate that that training pay expenses exceeded the sum that would have been paid to the five departed employees if they had remained in the employ of Overland.

8. The evidence presented at trial is insufficient to support a finding that Overland sustained damages in the form of mentor compensation.[6]

9. The evidence presented at trial is insufficient to support a finding that Overland sustained damages in the form of travel costs by executive, sales, and operations staff. David Harris testified that he and the chief executive officer of Overland traveled to Louisiana to assure customers that Overland had the capacity to maintain its services despite the loss of the five employees, but he did not state whether that was the sole purpose of the trips, and he did not testify as to whether the clients could have been assured by other, far less costly, means. David Green testified that he had used receipts in his determination of travel costs, but he also testified that he did not know whether the trips were made for purposes other than to reassure clients. Thus, the evidence was presented is insufficient to determine whether the trips were incurred due to the breach of the non-solicitation agreement, or whether they were undertaken for other reasons as well. Moreover, no evidence was presented to establish that the trips were reasonably necessary in light of uncontroverted testimony that three or four of the five departed employees were part-time employees. Though a plaintiff has a duty to take reasonable measures to mitigate damages, "his efforts to minimize them must be reasonable and in accordance with the rules of common sense." *Sepulvado v. Turner*, 862 So.2d 457, 463 (La.App. 2 Cir. 2003); see also, e.g., *Darnell v. Taylor*, 236 So.2d 57, 61 (La.App. 3d Cir.) *writ denied*, 239 So.2d 346 (La.1970) (stating that "efforts to minimize [damages] must be reasonable and in accordance with the rules of common sense, good faith and fair dealing").

## CONCLUSIONS OF LAW

1. The court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332.

---

[6] *See infra*, Conclusions of Law, ¶ 6.

2. In a diversity case, the court must apply state substantive law; here the applicable law is Louisiana law. See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). To determine Louisiana law the court must "make an educated '*Erie* guess' as to how the Louisiana Supreme Court would resolve the issues." *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 248-49 (5th Cir. 2008).

3. The evidence set forth by plaintiff in support of its claim for damages generated by relief trips is speculative and, therefore, does not support an award of damages. "Speculative damage awards without a basis of detail or specificity are not permitted." *Overton v. Shell Oil Co.*, 937 So.2d 404, 416 (La.App. 4 Cir. 2006) (citing *Bieber-Guillory v. Aswell*, 723 So.2d 1145, 1151 (La.App. 3 Cir. 1998)). "Courts cannot award speculative damages, thus proof which establishes only possibility, speculation or unsupported probability does not establish a damage claim." *Arco Oil & Gas Co., a Div. of Atlantic Richfield Co. v. DeShazer*, 649 So.2d 444, 448 (La.App. 3 Cir. 1994) (citing *Coon v. Placid Oil, Co.*, 493 So.2d 1236 (La.App. 3 Cir,), *writ denied*, 497 So.2d 1002 (La. 1986). David Green, who performed Overland's damage calculation, testified that the departure of the five employees required Overland to temporarily send trained employees to the Baton Rouge office to handle work that would otherwise have been performed by the departed employees. He further testified that, according to his calculations, the necessary relief trips cost Overland $320,400. Upon cross-examination, however, Green testified that he didn't know when the relief trips occurred. He also described his damage estimate as an educated guess and testified that he was unable, from the data available, to determine whether Overland might have lost business in 2006 such that the relief trips were not actually necessary.[7]

4. The evidence set forth by plaintiff in support of its claim for advertising costs incurred in recruiting and hiring replacement employees is speculative and does not support a finding of damages as David Green testified that he could not verify that any such advertisements were actually purchased.

5. The evidence set forth by plaintiff in support of its claim for home office training costs other than instructors' salaries is speculative and does not support an award of damages. Green testified that the $10,100 estimate of airfare, meals, and lodging costs for replacement employees is an

---

[7] When asked whether Overland might have lost business so that the relief trips were not necessary, Harris responded, "I can't attest to every, every, customer situation. I, I can't attest to that. Uhm, I can't, I can't marry it up to the precision that you're, that you're asking. No, I can't."

7

educated guess based on average prices. He further testified that he did not know why the estimate had not been based on actual receipts and stated that he did not know if the company had any document that would demonstrate whether full training of replacement employees actually occurred.[8]

6. The evidence set forth by plaintiff in support of its claim for mentor compensation costs is speculative and does not support an award of damages. Green testified that all trainees must undergo training by a senior employee who is paid an average of $100 per day to act as a mentor. Green also testified, however, that he did not know how many days of mentoring actually occurred, but, for purposes of his estimate, he assumed that each new employee received sixty-five days of mentoring because he had been told sixty-five days was a "common" period.[9] Green also included in his calculation a $50 per day loss in production by mentors due to the fact that they have to take time out of their normal productive activity to act as mentors. However, he testified that the daily loss figure used in the calculation was an estimate based on conversation with people in "operations," and no study had been done to confirm the figure.

---

[8] Green also testified that identifying the five employees who were hired to replace the departed five was difficult because several people were hired during the period in question. He stated that he had based his training estimates on five newly hired individuals who were identified by the general manager as comparable to the five departed employees: Steven Ardoin, Beverly Baxter, Helen Spreafico, Jennifer Taylor, and Christina Ward. Green, however, also testified that, though three or four of the departed employees were part-time employees, all five of the new employees, used for purposes of the estimate, were hired as full-time employees.

[9] Green also stated that he could have obtained individual data from Overland's records, but even then would have had trouble "marrying" that data to the individuals that Overland had identified as comparable to the departed employees.

8

## CONCLUSION

On the basis of the above Findings of Fact and Conclusions of Law, the court finds that plaintiff, Overland Solutions, Inc., has failed to establish any facts that merit a damage award against defendant, David Christensen.

Baton Rouge, Louisiana, August 21st, 2009.

_____
JAMES J. BRADY
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA